## MARGARET E. JAGER *v.* FIRST NATIONAL BANK.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued June 7—decided July 21, 1939.

*Jacob Berman,* for the appellant (plaintiff).

*Warren Maxwell,* for the appellee (defendant).

BROWN, J. The defendant owned a building on Main Street in Windsor Locks containing a store known as the Ben-Franklin Store on the ground floor. In August, 1935, the defendant constructed a new front for this store with two entrances from the sidewalk, herein referred to as the north and the south entrance.

These as constructed by a contractor for the defendant were identical except that the north one had a ramp with a grade of about 15 per cent. merging with the sidewalk, while the ramp of the south one with a 12 per cent. grade terminated in the tread of a concrete step about six inches above the sidewalk. The sidewalk had a grade of .8 per cent. On September 6, 1935, the defendant leased the store to Annie M. LeGeyt for five years retaining control of these two entrances. At 5.10 p.m. on February 16, 1937, the plaintiff, who was sixty-three years old, made some purchases in the store, and in leaving fell to the sidewalk at the step and was injured.

The plaintiff claimed to have proved that by the use of the same grade in the ramps the difference in elevation between the entrances due to the descending grade of the sidewalk would have been less than three inches, and the step in the south entrance could have been eliminated at slight expense either by warping the sidewalk or extending the ramp in accord with proper engineering practice, rendering this entrance safe; that the existence of a ramp with a step at the south entrance and a ramp without a step at the north entrance to a store of such short frontage constituted a hazard to patrons, particularly to those entering by the latter and leaving by the former; that this step was unnecessary and the plan of construction of the two entrances was faulty and defective and constituted a nuisance; that the plaintiff had patronized the store before but had used the north entrance only; that on that afternoon she had entered by it and left by the south entrance behind another woman at dusk, when neither the show windows of the store nor the street lamps were lighted and the color of the top of the step was slightly lighter than that of the abutting sidewalk; and that by reason of the conditions she failed to see

the step and was unaware of its being there before she fell to the sidewalk.

The defendant claimed to have proved that the type of construction maintained by it was standard and customary practice where, as here, a commercial building abuts a highway upon a descending grade; that this plan and type of construction was reasonably safe under the circumstances; that it was not feasible to further recess the south entranceway because of architectural difficulties, and because of an unnecessary sacrifice of valuable floor space; that warping the public sidewalk is opposed to sound engineering practice and that the type of construction utilized did not have a natural tendency to create danger or to cause hazard to patrons entering or leaving the store.

The only errors assigned requiring consideration relate to a colloquy between court and counsel in the presence of the jury; refusal of the court to charge as requested; and portions of the charge given. In support of the first of these assignments it is claimed in the plaintiff's brief that the effect of the court's statements in its discussion with counsel was to withdraw from the jury's consideration material evidence upon the issue of whether the defendant exercised reasonable care to have the premises reasonably safe, and also upon the issue of whether because unsafe the condition created constituted a nuisance. The record indicates that after evidence had been introduced by the plaintiff that it would have been feasible to have eliminated the step either by warping the sidewalk or by extending the ramp, and by the defendant to the contrary, as to the latter at least, the court inquired what bearing this evidence had on the case. Counsel for the plaintiff contended that it was admissible as one of the circumstances upon which the determination of "whether a condition was reasonably safe would depend," no

disproportional expense being involved. In response, after the court had suggested that if the step was not reasonably safe, what it would have cost to make it so was immaterial, its final observation was that the question for the jury's determination was "not what might have happened, it is what did happen, . . . whether . . . this was reasonably safe at the time; not whether it could be made safer, but whether it was reasonably safe." The emphasis so placed upon the reasonable safety of the step at the time of the plaintiff's fall as the essential requisite, regardless of the cost to the defendant involved in eliminating it, was favorable to the plaintiff rather than otherwise. Nevertheless, it appears from the claims of proof in the finding that the plaintiff was in no way hampered from offering evidence that the condition could have been remedied without great difficulty or expense. Under the circumstances, although the discussion took place in the presence of the jury after a request by the plaintiff's counsel that they be excused, it did not constitute error.

By requests to charge the plaintiff asked the court to instruct the jury as to the responsibility of an owner who relies upon claimed fault of the contractor as a defense. Neither the pleadings nor the claims of counsel raised this issue. It was undisputed that the defendant had control of the entrances in question, and had by its contractor made the alterations. The court's charge assumed this control in the defendant and it did not err in refusing to grant these requests.

In its charge the court, after stating that the defendant "was not running the Ben-Franklin Stores," but was the owner of the building and as such owed a duty toward those invited by the store to come upon the premises, in explaining the defendant's duty, continued: "If I opened a cigar store, . . . stocked it, . . .

threw open the doors and the public comes in, . . . I would owe to you . . . as a customer in my store the duty of exercising reasonable care to keep the premises in a reasonably safe condition. Now, that was the duty of this bank, the First National Bank." The plaintiff claims that the court erred in resorting to this illustration because it suggested to the jury that the defendant's liability was that of store proprietor rather than of building owner retaining control of the place where she fell, and that upon the charge as given the jury could well have concluded that her claim should have been made against the owner of the store rather than against the defendant as owner of the building. The illustration was inapt and unfortunate. Preceded as it was, however, by the court's express statement that the defendant was not running the store, the jury could only have understood it as limited to illustrating the degree of care incumbent upon the defendant with regard to the entrances of the store. So considered, the statement was not incorrect. We cannot say that it constituted harmful error.

The court further charged concerning the duty of the defendant: "The duty was not to keep the premises safe. It was under no obligation to have them safe. Its obligation on this phase of the duty was to have the premises reasonably safe. It did not put a guarantee upon the shoulder of every person that entered the store that he or she would not be injured. . . . The duty is simply to use reasonable care to keep the premises reasonably safe. . . ." The plaintiff contends that the terms "safe" and "reasonably safe" have the same meaning and that the sharp distinction suggested by the court was unwarranted and misleading to the jury upon the measure of the defendant's duty. These terms are at times used interchangeably. See Words & Phrases, 2d, 3d, and 4th Series; Restatement, 2

Torts, 939, § 343 (text and comment); *Papa* v. *Landow & Co., Inc.,* 118 Conn. 263, 266, 171 Atl. 670, and *Newell* v. *K. & D. Jewelry Co., Inc.,* 119 Conn. 332, 334, 176 Atl. 405; *Adams* v. *Mohican Hotel,* 124 Conn. 400, 402, 200 Atl. 336, and *Calkins* v. *Liggett Drug Co., Inc.,* 124 Conn. 14, 19, 197 Atl. 693. Strictly construed, however, "safe" is an absolute term, while "reasonably safe" is relative, importing the various elements involved in the particular situation referred to. See *Dunn* v. *MacDonald,* 110 Conn. 68, 78, 147 Atl. 26; *Lovell* v. *Bridgeport,* 116 Conn. 565, 568, 165 Atl. 795. Thus, an icy sidewalk which has been sanded cannot ordinarily be said to be "safe" in the sense that no one will fall upon it, but it may be termed "reasonably safe" in the sense that no one would be likely to fall upon it. While, as shown by the cases first above cited, we have not always maintained the distinction, where we have had occasion to state the rule with precision the words "reasonably safe" have been used in defining the proprietor's duty. *Geoghegan* v. *Fox & Co., Inc.,* 104 Conn. 129, 134, 132 Atl. 408. The court correctly charged that the defendant's duty was "to use reasonable care to keep the premises reasonably safe." It is evident from the context that its further language was used in an effort to make clear that the defendant's duty was not that of insurer but was limited to that of using reasonable care. The words quoted constituted a proper explanation to the jury of the duty which rested upon the defendant. A further criticism is that the court's repeated statements that the defendant was bound to use reasonable care "to keep" the entrances reasonably safe, while appropriate for referring to a defect consisting of a temporary dangerous condition, was misleading where, as here, the claimed defect was structural and of a permanent nature. In discussing this issue the court used the infinitive "to keep" four

times and "to have" three times. The latter words were certainly unexceptionable, and used interchangeably as the expressions were, the former could not have misled the jury to the plaintiff's prejudice. Nor in the absence of any request to charge, can we say that taken together with their context they were inadequate to sufficiently instruct the jury upon the simple issue of the defendant's duty as to this claimed structural defect.

The plaintiff's claim that by using the word "establish" in referring to essentials to be proved by the plaintiff the court erroneously prescribed conclusive proof as required, is without substantial merit. The court had explained at the beginning of the charge that the burden upon the plaintiff was to prove her case by a fair preponderance, that is, by the better evidence, and then continued to use the terms "prove" and "establish" interchangeably. "Prove" is the better word to use, but "establish" is not uncommonly used in the same sense and, taking the charge as a whole, the jury could not have been misled. See *Fisher* v. *Travelers Ins. Co.*, 124 Tenn. 450, 509, 38 S.W. 316, 330; *Torrian* v. *Ashford*, 216 Ala. 85, 88, 112 So. 418, 421. The words include the same meaning. Webster's New International Dictionary (2d Ed.). The court did not err in its charge as to the plaintiff's burden of proof. The court's characterization of plaintiff's counsel's claim in argument that the only real issue in the case was the amount of the verdict to be awarded the plaintiff as "perfectly absurd," while immoderate, did not constitute prejudicial error.

Referring to the plaintiff's duty upon the issue of contributory negligence, the court charged: "A person is required to see what the reasonably prudent person would have seen under like circumstances; and if such a person would have seen this step had he been coming

out of the store, then whether or not Mrs. Jager saw it, it was her duty to see it. . . ." The plaintiff claims that the court erred in failing to either refer to or explain what it meant by "like circumstances" and that the words quoted therefore did not adequately state the test determinative of whether the plaintiff was negligent in failing to see the step. The issue was a simple one and the application of the rule as stated obvious. In the absence of any request to charge, we cannot say that it was not within the court's discretion to limit its statement as it did. *Gett* v. *Isaacson*, 98 Conn. 539, 540, 120 Atl. 156; *Morosini* v. *Davis*, 110 Conn. 358, 363, 148 Atl. 371; *Corriveau* v. *Associated Realty Corp.*, 122 Conn. 253, 256, 188 Atl. 436.

The court charged that if this step "could be found to be a nuisance it would be one grounded on negligence" and that therefore contributory negligence of the plaintiff would bar recovery. The plaintiff claims that the jury could reasonably have found this to have been an absolute nuisance so that contributory negligence would not be a defense and that this instruction was erroneous. Following the theory upon which the case was tried, that the existence of a nuisance was a proper ground of recovery (See *Webel* v. *Yale University*, 125 Conn. 515, 7 Atl. (2d) 215), if an "act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law." *Melker* v. *New York*, 190 N.Y. 481, 488, 83 N.E. 565, quoted in *Hoffman* v. *Bristol*, 113 Conn. 386, 389, 155 Atl. 499; *Hill* v. *Way*, 117 Conn. 359, 364, 168 Atl. 1. Upon the record the court's determination that the condition of the entrance did not constitute an absolute nuisance within this test was correct. *Gipstein* v. *Kirschenbaum*, 118 Conn. 681, 684, 174 Atl. 261. Its instruction upon the issue

of nuisance was therefore proper. For the same reason its instruction that the plaintiff's contributory negligence "would bar recovery no matter . . . how unsafe may have been the condition which existed at the entrance of this store," while erroneous as an abstract proposition, could not have prejudiced the plaintiff upon the facts here.

There is no error.

In this opinion HINMAN, AVERY and JENNINGS, Js., concurred.

MALTBIE, C. J. (dissenting). The imperfections in the charge pointed out in the majority opinion can, I think, properly be held to be harmless, although they may well incline one against a too favorable approach to the charge as a whole. In one respect, however, it seems to me that the charge was inadequate. The entrance to the store in question was constructed for the defendant by a contractor. The plaintiff's request to charge referred to in the majority opinion called pointed attention to this fact. There was no reference to it in the charge; the jury's attention was not directed to the claim of the plaintiff that the entrance was defective by reason of the way in which it was constructed; and it did not instruct them that it might be a breach of duty on the part of the defendant not to change the structural condition or provide safeguards against a structural defect. Instead, the trial court repeatedly instructed the jury that the duty of the defendant was to "keep" the entrance in a reasonably safe condition, although it did three times use the word "have" in place of "keep." It seems to me that the jury, under the charge, might well have understood that the duty of the defendant extended no farther than to exercise reasonable care to keep the entrance

reasonably safe in the structural condition in which it was. No doubt the trial court was seeking brevity in its instructions, but we have pointed out that, desirable as this is, it imposes an obligation upon the court to exercise great care not to omit matters necessary for an adequate presentation of the issues to the jury. *Lovell* v. *Bridgeport*, 116 Conn. 565, 568, 165 Atl. 795.