Fern **WEISMAN**, Respondent,

v.

**HERSCHEND ENTERPRISES, INC.,**
Appellant.

No. 57554.

Supreme Court of Missouri,
Division No. 2.

May 13, 1974.

Almon H. Maus, Monett, for respondent.

Glenn A. Burkart, Mann, Walter, Burkart & Weathers, Springfield, for appellant.

HOUSER, Commissioner.

Fern Weisman sued Herschend Enterprises, Inc. for $50,000 damages for personal injuries sustained when she, fell on a step as she was leaving the ice cream parlor at Silver Dollar City, an amusement park possessed and operated by defendant in Stone County. A trial jury returned a verdict for defendant. The circuit court sustained plaintiff's motion for new trial. Defendant appealed prior to January 1, 1972.

The negligence pleaded was failure to construct and maintain the step in a reasonably safe condition for customers in that it was uneven, not level; that it "sloped or tilted to the north and to the east" so that a person stepping thereon "was caused to become unbalanced." Plaintiff's verdict-directing instruction submitted negligence in that the step "was sloped to the north and to the east and as a result the step was not reasonably safe for customers" and that defendant failed to use ordinary care to make the step reasonably safe or warn of it. Defendant pleaded contributory negligence in ' general terms. Defendant's verdict-directing Instruction No. III follows:

"Your verdict must be for the defendant if you believe:

First, plaintiff failed to use the hand-rail, and

Second, plaintiff's conduct submitted in paragraph First was negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause the injuries and damage plaintiff may have sustained."

Plaintiff fell as she used this step:

The fall occurred at 2 p. m. It had been raining that morning. At trial plaintiff did not remember whether the step was wet. In her deposition she said she pre- sumed it was wet. Plaintiff was wearing bifocal glasses. If she looked through the bifocal (lower) portion of the lens the ground look blurred, so she dropped her

chin and looked through the upper portion of her glasses.

The step was 112½ inches long from north to south and 18 inches wide. It was constructed of wood. At the north end the step was 7 inches lower than the porch floor. At the south end it was 3½ inches lower than the porch floor. Thus it sloped 3½ inches in 112½ inches, which is a grade of 3.1%. At the north end the step's east edge was 1 inch lower than at its west edge. The step was 18 inches wide. The east-west slope therefore was a grade of 5.6% at the north end. At the south end the step was level from east to west. Defendant's personnel director testified that the step was built "slanted away from the building" to drain off the water; that all of defendant's boardwalks were built "sloped down" to keep them from holding water, cupping and becoming slippery. A handrail or bannister was provided at the north end of the step, running east-west from the porch to the surrounding terrain.

While there is no evidence that plaintiff had previously used this step, she had been at Silver Dollar City before and knew the location of the restaurant (down the hill) and the general route to take to get there from the ice cream parlor. She testified as follows: As she walked across the porch, in a normal way, she observed the step on the other side. When she came to the step she looked down, saw that the step was slanted, stepped on the step with her left foot at the point marked "X" on Exhibit 7, and as she looked down she was "thrown forward to the pavement" because of "the way the step was." Acknowledging that she saw the step before she stepped on it, she said she "didn't realize it was that bad. It didn't look that bad from where I was standing." She knew the step sloped, but could not tell "how much" it sloped. She did not expect to be thrown down prior to the time she stepped on the step. There was no warning of any kind, sign, or anything of that nature to give her a warning about this particular step. This followed: "Q When you stepped onto the step, did you think it was safe? A I saw it was slanting. Q At the time you stepped on it, the step, did you think it was safe? A No. Q You did not? A Well, I saw the pictures in your office after that and it looked like a ten or twelve inch drop and that isn't safe. Q When you stepped on it, stepped on the step, did you have any warning at that time that it was dangerous? A No, I never." Plaintiff saw the handrail before she fell but did not touch the handrail before stepping off the porch, for the stated reason that she was "not close enough" to it. There was no one between her and the railing to prevent her from taking ahold of the railing, but neither was there "anything to warn [her] or to tell [her] to take ahold of it." When she "went down" she tried to grab for the railing.

The circuit court set aside the verdict and granted plaintiff a new trial on two grounds, the first of which was that Instruction No. III erroneously failed to require "a finding that plaintiff knew or, in the exercise of ordinary care, could have known the step in question was not reasonably safe, which would require plaintiff in the exercise of ordinary care, to use the 'handrail' referred to in such Instruction."

Ordinarily in situations where one's knowledge of general conditions from which danger arises is not necessarily knowledge and appreciation of that danger, in order to convict him of contributory negligence there must be a finding that he acted with knowledge and appreciation, actual or constructive, of the danger of injury. Koirtyohann v. Washington Plumbing & Heating Co., 471 S.W.2d 217, 221 (Mo. 1971), and cases cited. On the other hand, it is not error for an instruction to assume an uncontroverted fact, Charles F. Curry and Company v. Hedrick, 378 S.W.2d 522, 532 [8] (Mo.1964); it is not necessary to hypothesize facts about which there is no dispute, and no finding of knowledge and appreciation of danger is required where plaintiff's own testimony admits the fact.

In Cline v. Carthage Crushed Limestone Co., 504 S.W.2d 102 (Mo.1973), the converse situation was presented. Defendant's liability under a charge of negligence depended upon its knowledge and appreciation of a situation involving danger to persons using machinery. Defendant's own employees testified without contradiction that defendant's representatives were apprised of the dangerous situation. Plaintiff's verdict-directing instruction failed to include the requirement of a finding of defendant's knowledge and appreciation of the danger. This Court held that such a finding was unnecessary; that where essential facts are really not in dispute it is unnecessary to affirmatively require the jury to find such facts.

The rule works both ways and applies equally and for the same reasons in a case such as this where the propriety of an instruction submitting the contributory negligence of a *plaintiff* is at issue.

■ In its ruling on the instruction the circuit court convicted itself of an error of which it was not guilty. Reasonable minds may not differ on the fact that plaintiff actually had the knowledge which the circuit court ruled had to be submitted to and found by the jury before a verdict for defendant could be returned under Instruction No. III. Plaintiff admitted that she knew the physical conditions confronting her and appreciated the danger involved in using the step. She says she saw the step; observed it prior to stepping upon it; knew it was sloped; saw that it was slanting; *did not think it was safe;* knew there was a handrail and that there was nothing to keep her from using the handrail, but used the step, at point "X", without using the handrail. Her statement that she didn't realize that the step was "that bad" must be taken in connection with the other positive testimony of plaintiff that she did not think it was safe. Reddy v. Joseph Garavelli, Inc., 232 Mo.App. 226, 102 S.W.2d 734, 738 (1937). Although she did not know "how much" the step sloped, i. e., did not know the full extent of the

danger and did not expect to be thrown down, she knowingly exposed herself to whatever danger did exist by using the step which she considered unsafe, without availing herself of the handrail provided to enable patrons to avoid injury. We are not holding that plaintiff was contributorily negligent as a matter of law. We are holding that as a matter of law plaintiff knew the step was unsafe; that her knowledge that the step was unsafe was an admitted, uncontradicted, uncontested fact. That being true there was no necessity of requiring a finding that plaintiff knew the step was not reasonably safe.

■ The circuit court gave as a further reason for sustaining the motion for new trial that the court erroneously sustained an objection to final argument by counsel for plaintiff, as follows:

"She is there as a customer, a person to whom they have a duty to make the premises safe for. She is entitled, as an invitee on those premises, to presume that they will have something safe for her to walk on—."

In sustaining the objection and ordering the jury to disregard the statement of plaintiff's counsel the court did not err. Defendant's duty as the operator of a place of public amusement is to exercise ordinary or reasonable care for the safety of patrons and invitees commensurate with the particular conditions and circumstances involved in a given case but defendant is not an insurer of their safety. Gold v. Heath, 392 S.W.2d 298 [3] (Mo.1965), citing numerous authorities. By telling the jury that defendant's duty is to make the premises *safe* for plaintiff and that she could presume that defendant would provide a *safe* place for her to walk on counsel misstated the extent of defendant's obligation, and in effect advised the jury that defendant's duty was that of an insurer. "Safe" is an absolute term, while "reasonably safe" is a relative term. Jager v. First Nat. Bank, 125 Conn. 670, 7 A.2d 919, 922 (1939). If counsel had qualified his lan-

guage with the word "reasonably" before the word "safe" his argument would have been unexceptional but the argument actually made was subject to objection and the court properly ruled in directing the jury to disregard it.

Further contentions are made and briefed with respect to whether plaintiff made a submissible case of actionable negligence and whether plaintiff was guilty of contributory negligence as a matter of law, but in view of our ruling that the court erred in sustaining plaintiff's motion for new trial these other issues need not be explored.

Order granting new trial reversed. Cause remanded with directions to reinstate verdict for defendant and enter final judgment thereon.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.